**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:97-cr-815-DCN-1 |
| | ) | No. 2:98-cr-786-DCN-1 |
| STEPHEN JAMES MILLS, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant Stephen James Mills's ("Mills") motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 204. For the reasons set forth below, the court grants the motion and reduces Mills's sentence to a total term of time served.

## I.  BACKGROUND

On April 23, 1998, Mills pleaded guilty to four counts of obstruction of interstate commerce by armed robbery in violation of 18 U.S.C. § 1951(a) ("Hobbs Act") and two counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Based on Mills's criminal history, he was found to be a career offender under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 4B1.1. This court sentenced Mills to a term of imprisonment of 468 months, or thirty-nine years.[1] This sentence consisted of fourteen years for the Hobbs Act counts and twenty-five years as mandated by his two-count conviction under § 924(c), to be served consecutively.

---

[1] In Mills's other case, on August 7, 1998, Mills pleaded guilty to one count of conspiracy to obstruct interstate commerce by armed robbery in violation of 18 U.S.C. § 1951(a). United States v. Mills, No. 98-cr-00786-DCN-1 (D.S.C. 1998). He was sentenced to 168 months' imprisonment, with the sentence to run concurrently with his 468-month sentence. Id. at ECF No. 4.

1

Mills previously filed a 28 U.S.C. § 2255 motion on June 24, 2016 on the grounds that he was no longer a career offender under the Guidelines. ECF No. 186. The motion was stayed until December 2, 2019, ECF No. 191, and the court denied the motion on July 30, 2020, ECF No. 200.

On April 15, 2021, Mills filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 204. The United States of America (the "government") responded to the motion on June 17, 2021, ECF No. 214, and Mills replied on July 21, 2021, ECF No. 217. As such, the motion has been fully briefed and is ripe for review.

## II.  STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 458 F. Supp. 3d. 383, 385 (E.D.N.C. 2020). Prior to the First Step Act, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the BOP to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit recently clarified that district

courts are empowered to "consider <u>any</u> extraordinary and compelling reason for release that defendant might raise." <u>United States v. McCoy</u>, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original) (quoting <u>United States v. Brooker</u>, 976 F.3d 228, 230 (2d Cir. 2020)). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A). A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." <u>Griggs</u>, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high." <u>McCoy</u>, 981 F.3d at 288.

### III.   DISCUSSION

The court first considers, as it must, whether Mills has exhausted all his administrative remedies or otherwise met the threshold requirement of § 3582(c)(1)(A). Finding that Mills has done so, the court then addresses the substance of Mills's motion. Finally, the court examines the § 3553(a) factors and whether they warrant a reduction in Mills's sentence, ultimately finding that they do.

#### A.  Administrative Exhaustion

The court may grant "compassionate release" on a motion from a defendant if: (1) defendant has fully exhausted his administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on his behalf, or (2) the lapse of thirty days from the receipt of such a request by the warden of the facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i). Mills argues in his motion that the warden of Federal Correctional Institution Bennettsville ("FCI Bennettsville") received Mills's petition on November 13,

2020, and therefore, more than thirty days have elapsed since the warden received Mills's request.  The government argues, however, that it "has consulted with BOP and has been informed that the defendant has not filed for any reduction in sentence."  ECF No. 214 at 12.  As such, the government argues that the court lacks authority to act on Mills's motion.

The court certainly agrees that since the government did not waive the administrative exhaustion issue, § 3582(c)(1)(A) "plainly requires a prisoner to complete certain steps before filing his motion for compassionate release in the district court." United States v. Dourdoumis, 2021 WL 5492980, at *1 (4th Cir. Nov. 23, 2021) (unpublished opinion) (cleaned up).  However, Mills presents evidence that the warden of FCI Bennettsville received Mill's petition on November 13, 2020.  Mills attaches to his reply brief a copy of a United States Postal Service tracking confirmation indicating delivery at FCI Bennettsville, ECF No. 217-1, and a copy of the letter to the warden of FCI Bennettsville from Mills's counsel, ECF No. 217-2.  The government has failed to provide any contrary evidence suggesting that the warden never received Mills's petition.[2]

To the extent that the government is suggesting that the warden has not reviewed Mills's petition, and therefore, the thirty-day requirement cannot be met, such an argument is unavailing.  The Fourth Circuit recently reviewed the issue of whether a prisoner satisfies the threshold requirement in § 3582(c)(1)(A) without fully exhausting

---

[2] The government writes in its response that "defendant did not provide any documentary proof substantiating" the claim that Mills submitted a request to the warden for a sentence reduction.  ECF No. 214 at 12 n.4.  Given the government's silence after Mills produced supporting documents in his reply, the court presumes the government is satisfied with the documentation.

4

all his administrative rights to appeal.  United States v. Muhammad, 16 F.4th 126, 130

(4th Cir. 2021).  The court observed that a "prisoner may wait 30 days after filing his

request and—whether the BOP has ruled on the request or not—he is free to file a motion

in the district court."  Id. at 131.  Since the court finds that sufficient evidence exists to

conclude that the warden of FCI Bennettsville received Mills's petition, it finds that Mills

has satisfied the threshold requirement to raise this motion.

### B.  Extraordinary and Compelling Circumstances

18 U.S.C. § 924(c) imposes a mandatory minimum sentence for using or carrying

a firearm in connection with a crime of violence.  For a first offense, the statute imposes a

five- to ten-year mandatory minimum, depending on the circumstances, and for a

subsequent conviction, it imposes a consecutive twenty-five-year minimum.  Before the

First Step Act, the law treated separate counts of § 924(c) violations as subsequent

convictions, even where the counts were part of the same case.  See Deal v. United

States, 508 U.S. 129, 132 (1993), superseded by statute, First Step Act, Pub. L. No. 115-

391, 132 Stat. 5221, as recognized in United States v. Davis, 139 S. Ct. 2319, 2324 n.1

(2019).  Accordingly, the law compelled district courts to "stack" § 924(c) charges within

the same case, such that a defendant's first § 924(c) count carried a mandatory minimum

sentence of five to ten years and any subsequent count carried a mandatory minimum

sentence of twenty-five years.  These mandatory minimums were reflected in a

defendant's recommended sentence under the Guidelines.  The First Step Act ended the

practice of stacking by clarifying that the twenty-five-year mandatory minimum applies

only when a prior § 924(c) conviction arises from a separate case and "has become final."

First Step Act § 403(a), 132 Stat. 5222.  The Fourth Circuit has since confirmed that the

twenty-five-year mandatory minimum is "reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution." United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020). However, that change does not apply retroactively to sentences—like Mills's—imposed prior to the First Step Act's enactment. See First Step Act § 403(b), 132 Stat. 5222; Jordan, 952 F.3d at 174.

Mills argues that this change in the § 924(c) sentencing regime constitutes an extraordinary and compelling circumstance justifying a reduction in his sentence. In support, Mills points to the Fourth Circuit's ruling in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). There, the court announced two significant declarations related to the First Step Act. Id. at 271. First, the court definitively held that the First Step Act's changes to § 3582(c)(1)(A)(i) rendered the once-relevant policy statements codified in U.S.S.G. § 1B1.13 inapplicable, meaning that district courts "are empowered to consider any extraordinary and compelling reason for release that a defendant might raise," not just those included in the policy statements. Id. at 284 (emphasis in original) (quoting Brooker, 976 F.3d at 230). More germane to Mills's instant motion, the Fourth Circuit went on to find that the defendants in McCoy were entitled to compassionate release based on "the severity of [their] § 924(c) sentences and the extent of the disparity between [their] sentences and those provided for under the First Step Act." Id. at 286. Importantly, however, the Fourth Circuit also made clear that defendants convicted under the old § 924(c) sentencing regime do not receive relief as a matter of right: "not all defendants convicted under § 924(c) should receive new sentences;" rather, "courts should be empowered to relieve some defendants of those sentences on a case-by-case basis." Id. at 287.

As the court discussed earlier, Mills pleaded guilty to two counts for violations of § 924(c) and four counts of Hobbs Act robbery.  The Guidelines recommended a sentence of 151 to 188 months for the Hobbs Act convictions.  ECF No. 86 at 2.  Based on the pre-First Step Act practice of stacking counts, the Sentencing Guidelines further mandated a sentence of 300 months (or twenty-five years) for Mills's § 924(c) convictions.  Accordingly, Mills's Sentencing Guidelines range in total was 451 to 488 months.[3]  Mills's Sentencing Guidelines range, were he sentenced today, would look far different.  To be sure, the Sentencing Guidelines would still recommend a sentence of 151 to 188 months for Mills's Hobbs Act convictions, and Mills does not argue that the sentence range for those convictions would be different.  However, under § 924(c)(1)(A)(ii), his other two counts would carry a minimum of ten years rather than twenty-five.

The government concedes that were Mills to plead guilty to the same counts that he originally pled in 1998, under the modern rule of § 924(c), Mills would face a reduced minimum sentence[4] for those two counts.  However, the government argues that such a

---

[3] As the government notes, the parties calculated the sentencing range to be between 410 to 437 months in the plea agreement.

[4] However, the government argues that if Mills were sentenced on the two § 924(c) counts today, he would face a mandatory minimum sentence of fourteen years (seven each), rather than ten.  The statute provides that if a firearm is brandished, a defendant shall "be sentenced to a term of imprisonment of not less than 7 years."  18 U.S.C. § 924(c)(1)(A)(ii).  But, as Mills notes, the determination of whether a firearm was brandished is a "separate, aggravated offense that must be found by the jury." Alleyne v. United States, 570 U.S. 99, 115 (2013); see also Bias v. United States, 2020 WL 6263187, at *5 (D. Md. Oct. 22, 2020) ("Alleyne requires that allegations supporting a mandatory minimum term of imprisonment must be alleged in an indictment, and either admitted by a defendant at a guilty plea or found by a jury at trial.").  Mills did not admit to brandishing in his plea.  It follows that in such circumstances, the enhanced penalty should not be reflected in resentencing on a compassionate release motion.  See United States v. Brinkley, 2021 WL 3708642, at *1 n.1 (E.D. Pa. Aug. 20, 2021) (noting that

drastically lowered sentencing range is deceptive as it would have never considered a plea within that range today.  Specifically, the government contends that as part of the plea agreement, it elected not to indict Mills on eight other alleged armed robberies.  The government now claims that if the modern sentencing range applied, it would have indicted Mills for all the South Carolina robberies he allegedly committed, and Mills would be indicted on thirteen counts of violating § 924(c) that alone would result in a sentence of ninety-one years.

The court is unwilling to play a game of "what-ifs" with the government.  As Mills appropriately observes, "the focus of a sentence reduction motion is on the sentence the defendant is serving."  ECF No. 217 at 5.  The government's argument in essence is that it would have either indicted Mills on more counts if the law had been different in 1998 or that it would indict Mills on more counts if he were facing prosecution today; either way, the argument is purely hypothetical.  Moreover, this type of argument has been considered by other district courts and soundly rejected.  For instance, the Western District of Virginia, in considering a compassionate release motion stemming from a drug charge, thoroughly explained why such an argument is flawed:

> Nearly all other district courts, including this one, have rejected the notion that a court should engage in "a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered." [United States v. Dodd, 2019 WL 1529516, at *2 (S.D. Iowa Apr. 9, 2019)]. See also [United States v. Thompson, 2019 WL 4040403 at *7 (W.D. Pa.

---

because the court, and not the jury, found that the defendant brandished a firearm, the applicable sentence was five years on each § 924(c) count); United States v. Wingate, 2021 WL 3124187, at *6 n.1 (E.D. Mich. July 23, 2021) (noting that due to Alleyne, "if [the defendant] had been subject to FSA § 403(a) resentencing, this Court would have been obligated to sentence him to a minimum of . . . five years each for the latter two § 924(c) count").  Therefore, the court finds that for purposes of Mills's motion, each count under § 924(c) would carry a term of imprisonment of not less than five years, for a total of ten years.  See 18 U.S.C. § 924(c)(1)(A)(i).

Aug. 27, 2019)] ("Engaging in a hypothetical assessment of how a defendant might have been charged and how a finding of guilt would have come about is fraught with conjecture and reflects an approach that is contrary to the sound administration of justice."); . . . [United States v. Stanback, 377 F. Supp. 3d 618, 624 (W.D. Va. 2019)] (declining to speculate on how [the] defendant would have been charged and whether he would have been convicted if the Fair Sentencing Act had been in effect at time he was convicted); [collecting additional cases].

While it is possible that the government would have proceeded against [the defendant] under 18 U.S.C. § 841(b)(1)(A), it also is possible that it would have chosen not to do so. The government could have determined that the evidence was insufficient to prove the quantity of cocaine base beyond a reasonable doubt, or if [the defendant] were indicted on that amount, the parties might have entered into a plea agreement where [the defendant] pleaded to less than 280 grams of cocaine base. The retroactive assumption suggested by the government simply is too speculative a basis on which to determine [the defendant's] eligibility for a sentence reduction. Thus, this court declines to assume that [the defendant] would have been charged and convicted of possessing more than 280 grams of cocaine base if the Fair Sentencing Act had been in effect at the time he was convicted.

United States v. Robinson, 2019 WL 5967967, at *4 (W.D. Va. Nov. 13, 2019). See also United States v. Rose, 379 F. Supp. 3d 223, 236 (S.D.N.Y. 2019) ("The Court cannot simply assume that the Government would have been successful in proving an indispensable element of a criminal offense . . . . [H]istorical revisionism is an inappropriate judicial exercise.").

As an alternative reason for rejecting the government's argument, the court further observes that while the statutory sentencing guidelines certainly "remain[] helpful guidance even when motions are filed by defendants," the court ultimately has discretion to determine sentencing issues. Compare McCoy, 981 F.3d at 282 n.7, with id. at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."). The Southern District of New York

adopted the same reasoning to reject a nearly identical argument from the government

related to a § 924(c) sentencing disparity.  There, the government had argued that

> if it had known that [the defendant] would later attempt to reduce his
> sentence based on the FSA's sentencing change, the Government could
> have charged [the defendant] with four § 924(c) offenses [rather than two],
> each carrying a mandatory consecutive seven-year sentence post-
> FSA . . . . This charging stratagem, it notes, would have neutralized [the
> defendant's] argument that consistency with the FSA supported a sentence
> reduction.

United States v. Robles, 2021 WL 3524067, at *9 (S.D.N.Y. Aug. 10, 2021) (emphasis

omitted).  The court responded:

> Be that as it may, sentencing is the Court's province.  Even assuming that a
> hypothetical prosecutor would have charged [the defendant] with four
> separate § 924(c) counts—a charging practice this Court has not seen for
> any post-FSA defendant in a case not involving the discharge of a
> firearm[5]—in considering a post-sentence application under § 3582(c), the
> Court has discretion to determine whether extraordinary circumstances
> justify a sentence reduction and whether the § 3553(a) factors are
> compatible with a reduced sentence . . . . In this case, that analysis justifies
> a sentence reduction, whether or not a hypothetical prosecutor, determining
> the charges to pursue at a post-FSA trial against [the defendant], might have
> felt it necessary to stack four rather than two § 924(c) counts in addition to
> the four non-firearms counts.

Id. at *10.

Turning back to Mills, the court finds that regardless of whether it is based

on the sentencing guidelines or due to the court's own sound discretion, the

significant sentencing disparity presents extraordinary and compelling

circumstances that warrant relief.  As the court described above, Mills faced a

mandatory minimum sentence of 451 months when the court sentenced him,

largely based on the mandatory minimum of 300 months pursuant to § 924(c).

---

[5] Like the Southern District of New York, this court fails to identify any such case
as well.

10

Now, pursuant to changes promulgated under the First Step Act, Mills would face a guideline sentence of approximately 271 months in prison.  Like the disparities that the Fourth Circuit considered in McCoy, the "enormous" disparity in this case between the sentence Mills received and the one "Congress now believes to be an appropriate penalty" constitutes an extraordinary and compelling reason to grant relief.  981 F.3d at 285 (finding 200-month and thirty-year sentence disparities to be "extraordinary and compelling").  Accordingly, the court advances to the sentencing factors under § 3553(a) to determine the extent of the reduction warranted here.

### C.  Section 3553(a) Factors

The disparity in the sentencing guidelines cannot alone provide a basis for a reduced sentence.  See Griggs, 462 F. Supp. 3d at 620–21.  In order for the court to determine that a reduction in sentence is warranted, it must further consider § 3553(a).  Section 3553(a), in turn, instruct the court to "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

11

(4) the kinds of sentence and the sentencing range established for [the offense committed];

[. . .]

(5) any pertinent policy statement;

[. . .]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The court considers each factor that the parties dispute in turn.

### 1. Nature of the Offense

Mills was convicted based on his commission of sixteen armed robberies of various businesses.  During the robberies, he allegedly brandished a pistol and pointed it at victims.  On at least one occasion, Mills allegedly placed the muzzle against the forehead of a store employee.  Mills was also thirty-two years old at the time he committed the instant offenses.  While hardly dispositive, it is worth noting that in McCoy, the court considered as one of the factors the "relative youth" of the defendants—ranging from nineteen to twenty-four years old—at the time of their offenses.  981 F.3d at 288.  Altogether, the nature and circumstances of Mills's offense weigh against reducing his sentence.

### 2. History and Characteristics of Defendant

Mills also has a significant criminal history.  As outlined in the presentence report, Mills previously had approximately nine convictions, beginning when he was nineteen.  ECF No. 47 ¶¶ 75–83.  These include convictions for possession of cocaine, id. ¶ 75, and multiple burglary and grand larceny convictions, id. ¶¶ 78, 81–82.  The government also avers that the court should take into account his history of filing false

liens before federal judges in his other cases.  Again, the court agrees with the

government that Mills's criminal history weighs against reducing his sentence.

On the other hand, Mills will be fifty-seven years old at the time of his release.

While he has a significant and checkered criminal history, his older age is another

important characteristic reflecting on his "penchant for recidivism."  United States v.

Payton, 754 F.3d 375, 377 (6th 2014).  In Payton, the Sixth Circuit included the

following statistical and scientific evidence:

> The Sentencing Commission has observed that "[r]ecidivism rates decline
> relatively consistently as age increases."  Recent analysis from the Bureau
> of Justice Statistics considering the recidivism rates of released prisoners in
> 30 states[6] . . . from 2005 to 2010 supported the Commission's conclusion,
> finding decreased recidivism rates as prisoners age.  These statistics suggest
> that past fifty years old there is a significantly lower rate of recidivism.  Both
> the Guidelines and [the Sixth] Circuit's cases explicitly acknowledge that a
> defendant's age, and specifically old age, is a relevant consideration in
> sentencing.  U.S.S.G. § 5H1.1; United States v. Berry, 565 F.3d 332, 341
> (6th Cir. 2009); United States v. Davis, 537 F.3d 611, 616–17 (6th Cir.
> 2008).    And  observers  of  the  criminal  justice  system  have  long
> acknowledged the "key" argument "that elderly offenders pose so low a risk
> to  the  public  that  long  or  otherwise  harsh  sentences  have  little  to  no
> utilitarian benefit."  Indeed, they observe that "because of health or other
> reasons, elderly offenders have the lowest rate of recidivism of all types of
> offenders; in fact, only about one percent of elderly offenders ever face a
> second conviction."  Id.  Studies indicate that neurotransmitters affecting
> aggression supplied at the synapses of brain neurons vary based on age, and
> may explain the observed decline in recidivism among older prisoners.

Payton, 754 F.3d at 378–79 (footnotes omitted and emphasis added); see also United

States v. Howard, 773 F.3d 519, 533 (4th Cir. 2014) ("[S]tudies demonstrate that the risk

of recidivism is inversely related to an inmate's age.").  Accordingly, the court finds that

Mills's age strongly weighs in favor of a reduced sentence.

---

[6] While South Carolina was not among the states included in the study, the court
finds that Bureau of Justice Statistics' findings are nonetheless relevant.

Finally, Mills's recent rehabilitative efforts give the court good reason to reduce his sentence to reflect the sentence that Mills would potentially receive today.  According to Mills, in his twenty-four years of imprisonment, he has only had two infractions, with the most recent occurring over sixteen years ago.  Mills has also participated in and completed dozens of educational and vocational programs during his time in prison.  The government disagrees with this assessment, pointing to Mills's progress report and arguing that it "shows a scattering of short-term classes, and not many of them."  ECF No. 214 at 20.  However, Mills attaches several certificates that do not appear to have qualified for recognition on his progress report but nevertheless show his efforts to work on self-development and personal growth.  ECF No. 217-4.  These include completion of a bible correspondence course, computer courses offered by Coastal Bend College, and a suicide prevention program.  Id. at 2–3, 7.  Mills also details that he was an inaugural member of FCI Berlin's EPOCS leadership class, where he took an active role in proposing additional changes to the correctional institution's executive staff for expanding the outreach of the program.  ECF No. 213.  In short, Mills has established an excellent institutional record, and his rehabilitative efforts clearly weigh in favor of reducing his sentence.

### 3.  Danger to the Public

Under § 3553(a)(2)(C), the court may consider the need for the sentence to protect the public from further crimes of the defendant.  The government argues that the BOP has evaluated Mills as being a "medium risk recidivism inmate," and he had been considered "high risk" until November 13, 2020.  ECF No. 214 at 21.  While the court has no doubt that the BOP makes its determinations with significant thought and purpose, the

government fails to explain that reasoning or the significance of this determination.  <u>See</u> <u>also</u> ECF No. 214 at 22 ("The criminal history exhibited by this defendant and his behavior in this case strongly suggests that he is a recidivist offender.").

Nevertheless, the court recognizes that the BOP is in a far better position to make this determination than the government, Mills's attorneys, and the court.  In response, Mills asks that the court "place great weight on the fact that Mills suffered from a serious drug addiction at the time of the underlying offenses but has remained clean for decades." ECF No. 204 at 17.  He further argues that he appreciates the consequences of drug abuse now and "is now capable of regulating his once-impulsive behaviors." <u>Id.</u>  While Mills's statement is hardly direct evidence of rehabilitation, the court agrees that this factor focuses on whether he is <u>presently</u> a danger.  <u>See</u> <u>Pepper v. United States</u>, 562 U.S. 476, 492 (2011) (explaining that evidence of a defendant's post-sentencing conduct "provides the most up-to-date picture of his 'history and characteristics'") (quoting 18 U.S.C. § 3553(a)).  As such, whether Mills's present circumstances—namely his lack of drug abuse—are different from those when he committed the offenses is a valid consideration. <u>See</u> <u>United States v. Graves</u>, 2021 WL 1909631, at *10 (D. Md. May 11, 2021) (finding that since the defendant's criminal conduct "was driven largely by his own longtime drug addiction" and "he has since spent just over three years imprisoned without using drugs," "it seems reasonable to infer that defendant is well positioned to maintain a drug-free life upon release"); <u>United States v. Johnson</u>, 2020 WL 6162199, at *2 (D. Md. Oct. 21, 2020) (holding that since the defendant's prior criminal record consisted primarily of charges stemming from drug addiction, he did not present a danger to the community, but noting that he had no history of possessing or using firearms); <u>but see</u> <u>United States v.</u>

<u>Bush</u>, 2020 WL 5628989, at *9 (D. Md. Sept. 18, 2020) (declining to adopt the defendant's argument that his criminal conduct was the "product of his drug addiction" due to the fact that there was evidence of "recent use of narcotics"). Notably, Mills has not failed a single drug test while incarcerated. And the court will further require Mills to participate in substance abuse testing as a required condition of his release. Further, the court is satisfied that Mills's home living arrangements are stable such that they would not increase Mills's risk of recidivism. As the court understands it, Mills recently lost his mother. Mills has represented that he is close with his mother's partner, who would welcome Mills to reside with him upon release. It is the court's hope that Mills truly intends what his attorneys have artfully written in a letter to the court: that he is "ready to ensure that he honors his mother's legacy" by reconnecting with his brothers and his community and making up for his past mistakes. ECF No. 218. Altogether, there is evidence that Mills should no longer be a danger to the community, and a reduction in his sentence is consistent with the factor presented under § 3553(a)(2)(C).

### 4. Sentencing Disparities

Finally, the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar crimes weighs in favor of a sentence reduction. As the court has discussed at length above, Mills's sentence is harsher than the sentences of similarly situated defendants who are sentenced today. In light of the nature of Mills's offense, his criminal history, his age, his rehabilitative efforts, and the changes within the applicable sentencing regime, the court finds that a sentence of time served is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** Mills's motion for compassionate release.  The previously imposed sentence is reduced to a total term of time served.

Upon release from imprisonment, Mills shall be placed on supervised release for a term of three years as to each count to run concurrently.  While on supervised release, Mills shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(c) (attached herein).  Standard conditions of supervision 1 through 9 and 13 serve the statutory sentencing purposes of public protection and rehabilitation pursuant to 18 U.S.C. § 3553(a)(2)(C) and (D).  Standard conditions of supervision 10 and 12 serve the statutory sentencing purpose of public protection pursuant to 18 U.S.C. § 3553(a)(2)(C).  Standard condition of supervision 11 ensures that Mills does not engage in activities that may potentially conflict with the other conditions of supervision and that may pose risks to Mills's probation officer.  All financial obligations previously imposed remain in effect.  Additionally, the following special conditions apply:

**Special Conditions**:

1.    The Defendant shall participate in a program of testing for substance abuse as approved by the U.S. Probation Officer.  This condition serves the sentencing purposes of public protection and rehabilitation.  18 U.S.C. § 3553(a)(2)(C)–(D).

2.    Mills shall contribute to the costs of any treatment, drug testing, and/or location monitoring, not to exceed the amount determined reasonable by the court-approved U.S. Probation Office's Sliding Scale for Services, and shall cooperate in

securing any applicable third-party payment, such as insurance or Medicaid. This condition serves the purpose of Mills having some personal stake in the programs in which he is participating and to afford greater opportunities for others on supervised release to receive the benefits of such programs.

3.      Mills shall be screened for the REAL program, and if accepted, must successfully complete the program.

This order is stayed for up to fourteen days, to establish a release plan, to make appropriate travel arrangements, and to ensure Mills's safe release. Mills shall be released as soon as a release plan is established, appropriate travel arrangements are made, and it is safe for him to travel. If more than fourteen days are needed to make appropriate travel arrangements and ensure Mills's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 24, 2022**
**Charleston, South Carolina**

**Attachment:**

**In accordance with 18 U.S.C. § 3583(d), the following are mandatory conditions of supervision:**

(1) You must not commit another federal, state or local crime.

(2) You must not unlawfully possess a controlled substance.

(3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

(4) You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution, if applicable.

(5) You must cooperate in the collection of DNA as directed by the probation officer, if applicable.

(6) You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense, if applicable.

(7) You must participate in an approved program for domestic violence, if applicable.

**In accordance with U.S.S.G § 5D1.3(c), the following are standard conditions of supervision:**

(1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(4) You must answer truthfully the questions asked by your probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e.,

anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers). *This condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C).*

(11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court. *A confidential human source or informant is a defendant who engages in the prohibited activity of associating with persons engaged in criminal activity for the purpose of furnishing information to or acting as an agent for a law enforcement or intelligence agency. The activities required of confidential informants or human sources may potentially conflict with conditions normally imposed by a court and acting as a confidential informant or human source is generally inconsistent with the rehabilitative and re-integrative goals of supervision. Additionally, such activities may pose risks to the probation officers who supervise these individuals, especially when they have limited knowledge or no knowledge of the nature of the informant's activities.*

(12) If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, **with the prior approval of the Court**, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk. *This condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C).*

(13) You must follow the instructions of the probation officer related to the conditions of supervision. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*